UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.L.,<br><br>          Plaintiff,<br><br>     v.<br><br>KILOLO KIJAKAZI,<br><br>          Defendant. | Case No. 20-cv-04240-RS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR CALCULATION AND AWARD OF BENEFITS** |

**I.   INTRODUCTION**

Plaintiff S.L.[1] appeals the decision of the Commissioner of Social Security ("the Commissioner") denying her disability benefits under the Social Security Act ("SSA"). An Administrative Law Judge ("ALJ") reviewed S.L.'s application and determined she was not disabled and thus not eligible for benefits. Upon consideration of the parties' cross-motions for summary judgment and for the reasons discussed below, S.L.'s motion for summary judgment is granted. The ALJ's assessment of the medical evidence improperly discounted the opinion of S.L.'s treating physician, and reflected a misunderstanding of the manifestations of fibromyalgia, one of S.L.'s severe impairments. As the record here is fully developed, and the treating

---

[1] Because opinions by the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by her initials. This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

physician's opinion is sufficient to establish disability, the matter is remanded for calculation and award of benefits.

## II. BACKGROUND[2]

S.L. lives in Northern California, and at the time of the ALJ decision was 50 years old. She has numerous diagnoses that she says prevent her from working, including fibromyalgia, migraines, degenerative disc disease, obesity, depression, and anxiety. S.L.'s primary impairment is fibromyalgia.

In July 2014, S.L. filed for Disability Insurance Benefits pursuant to Title II of the SSA. AR 165-66. The Commissioner denied her application both initially and on reconsideration. AR 102-05, 112-16. After a hearing in January 2016, an ALJ found S.L. not disabled, and the Appeals Council declined to disturb this decision. AR 1-3, 17-29, 34-67.  Plaintiff filed a complaint in this Court pursuant to 42 U.S.C. § 405(g). On August 3, 2018, another judge of this Court granted a stipulation between S.L. and the Commissioner and remanded to the Agency for further proceedings. AR 478-79. The Court directed the Appeals Council to instruct the ALJ to, among other things, reevaluate the medical evidence and further evaluate whether Plaintiff has residual functioning capacity to perform her past relevant work and other jobs.

On remand, another ALJ held a new hearing in May 2019 and issued a decision in August 2019 finding S.L. not disabled. AR 404-21, 428-68. S.L. filed exceptions to the decision, and the Appeals Council declined to disturb the August 2019 ALJ decision. AR 392-94. This action followed.

## III. LEGAL STANDARD

Under 42 U.S.C. § 405(g), a district court has jurisdiction to review the Commissioner's final decision denying benefits under the SSA. An ALJ's decision to that effect must be affirmed if it is supported by substantial evidence and is free of legal error. *Beltran v. Astrue*, 700 F.3d 386,

---

[2] The facts cited in this synopsis and the rest of the order are based on the certified administrative record ("AR").

388 (9th Cir. 2012). Substantial evidence is defined as "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam). In determining whether a decision is supported by substantial evidence, the court must examine the administrative record as a whole, considering all of the facts. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). If the evidence supports more than one rational interpretation, the court must defer to the ALJ's decision. *Id*. at 1258. "[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (internal quotation marks and citation omitted).

## IV.  DISCUSSION

### A.  Standard for Evaluating Disability

A person is "disabled" for the purposes of receiving Social Security benefits if she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which is expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner must follow a five-step sequential inquiry. 20 C.F.R. §§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The burden rests on the claimant to prove: (1) she is not working; (2) she has a severe medically determinable impairment that is expected to last more than twelve months; and either (3) that impairment is severe enough to meet or equal an impairment listed as *a priori* disabling without further vocational-medical evidence; or (4) the impairment causes such functional limitations that she cannot do her past relevant work. 20 C.F.R. § 404.1520(a)(4)(i)–(iv).

If the claimant successfully proves she cannot do her past work, then the burden shifts to the Commissioner to show at step five that the claimant can perform other work that exists in significant numbers in the economy; otherwise, the claimant will be found disabled. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). Moreover, if the claimant's impairment does not meet or equal a listed impairment under step three, the ALJ must determine

the claimant's residual functional capacity ("RFC") and apply it during steps four and five to make a final disability determination. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1034 (9th Cir. 2007) (citing 20 C.F.R. § 404.1520(a)(4), which describes the five-step process). An individual's RFC is the most she can still do despite her limitations. *See* 20 C.F.R. § 416.945(a)(1).

**B. ALJ Application of Standard**

The ALJ followed this five-step inquiry.[3] At step one, she found that S.L. had not engaged in substantial gainful activity since the alleged onset date of June 15, 2013. AR 410. At step two, she found that S.L. had four severe impairments: fibromyalgia, migraine headaches, obesity, and degenerative disc disease of the cervical and lumbar spine. *Id.* The ALJ found that S.L.'s medically determinable mental impairments of depression and anxiety were non-severe because they "caused no more than 'mild' limitation in any of the functional areas" set out in the disability regulations for evaluating mental impairments. AR 410-11. This assessment of the mental impairments was based on the examination of Ilene Morrison, Ph.D., a State agency psychological consultant, along with two other psychological consultants. AR 412. At step three, the ALJ found that S.L.'s impairments did not meet or equal the severity of impairments listed in the relevant regulations. *Id.*

The ALJ then assessed S.L.'s residual functioning capacity ("RFC"), detailing S.L.'s medical history. The ALJ first found that S.L.'s medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 414. Imaging studies, including x-rays and MRIs, showed the existence of degenerative disc disease. AR 415. Concerning the fibromyalgia diagnosis, the ALJ noted the documentation of widespread myofascial pain, including physical examinations that indicated 18 out of 18 positive trigger points used to diagnose fibromyalgia, and S.L.'s visit to a rheumatologist. AR 414-15. S.L. takes medication for her pain, migraines, and fibromyalgia. AR 414. The ALJ also noted that the impairments of

---

[3] All references to proceedings before the ALJ are to the 2019 hearing and decision, unless otherwise specified.

fibromyalgia, migraines, and degenerative disc disease were complicated by S.L.'s obesity, which would be reasonably expected to exacerbate her other symptoms. AR 415.

The ALJ also found, though, that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" AR 414. The ALJ stated that "providers regularly noted that the claimant was not in acute distress[,]" and that S.L. was able to do motions like lying down, sitting up, and squatting "with ease." AR 416. S.L.'s primary case physician noted improvement over time. *Id.* The ALJ pointed out that S.L. "was able to exercise throughout the considered period," including at certain points walking a total of three miles per week on a treadmill and using weight machines at the gym three times per week. *Id.* This evidence, along with other reasons described by the ALJ, "demonstrate[d] that these impairments and their effects were not as intense, persistent, or limiting as [S.L.] alleged." *Id.*

The ALJ then chose weight to assign to the medical and non-medical opinions and the prior administrative findings. The ALJ assigned little weight to a functional report from S.L.'s brother. The ALJ described that the brother only visited S.L. once a week, and explained that he is not a medical professional trained to assess functional ability. AR 416. Of the various medical findings in the record, the ALJ assigned the most weight to a non-treating and non-examining State agency medical consultant from 2015, because the ALJ found the consultant's review was consistent with the record before the ALJ. AR 417. The ALJ assigned only little weight to S.L.'s treating physician, Dr. Washington. *Id.* The ALJ explained that Dr. Washington's treatment notes were "largely free from specific findings related to [S.L.'s] fibromyalgia, headaches, or musculoskeletal impairments, other than noting diagnoses or complaints." AR 418. The ALJ further explained that some of these notes were illegible, and it was not always possible to determine whether Dr. Washington completed each examination himself or rather reviewed the notes from the examination. *Id.* The ALJ also stated that the remainder of the record showed S.L. could engage in more movement than opined by Dr. Washington. *Id.*

The ALJ found that S.L. had the RFC to perform light work as defined in 20 C.F.R. §

1   404.1567(b). The ALJ found that S.L. could lift 10 pounds frequently and 20 pounds occasionally,
2   could sit for 6 of 8 hours, and could stand and/or walk for 4 of 8 hours. AR 413. The ALJ also
3   found that S.L. was limited to frequent bilateral handling and fingering. AR 414. The ALJ
4   explained that this RFC assessment was supported by the findings of the State agency medical
5   consultants as well as another doctor, Dr. Gable, who performed an internal medicine consultative
6   examination. AR 417-18. The ALJ stated that the RFC assessment was also supported by "the
7   regular notations of grossly normal gait, range of motion, strength, sensation, and deep tendon
8   reflexes." AR 418-19. The RFC assessment stood in contrast to the limitations described by Dr.
9   Washington, who described greater constraints on S.L.'s bilateral handling and fingering, and
10  explained that S.L. would need 2-4 unscheduled 15-minutes breaks a day and would likely have
11  more than four absences per month. AR 418.

12  For steps four and five, the ALJ relied on the testimony of a vocational expert ("VE"). At
13  step four, the ALJ found that S.L. had relevant past work experience as a general office clerk and
14  the requirements of that position were not precluded by S.L.'s RFC. AR 419. The ALJ also made
15  alternative findings for step five, finding that there are jobs existing in significant numbers that
16  S.L. could have performed, such as parking lot attendant and mailroom clerk. AR 419-20. The
17  ALJ concluded that S.L. did not have a disability within the meaning of the SSA in the relevant
18  time period. AR 420.

**C. Arguments on Appeal**

S.L. argues that in determining the RFC, the ALJ improperly evaluated the medical evidence, improperly rejected her testimony, and improperly rejected the lay witness testimony of her brother.[4] Each of these arguments is addressed below.

---

[4] S.L. also argues that the ALJ's step four and step five findings, that S.L. could return to her past work or perform other occupations identified by the VE, are not supported by substantial evidence. S.L. argues that the failure to include limitations identified by Dr. Morrison, an examining psychologist, and Dr. Washington, the treating physician, when assessing whether S.L. could perform these jobs was error. This argument "simply restates [S.L.'s] argument that the ALJ's RFC finding did not account for all her limitations because the ALJ improperly discounted . . . the testimony of medical experts[,]" because the ALJ must ask the VE to take into account the limitations she has identified. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir.

ORDER REMANDING FOR AWARD OF BENEFITS
CASE NO. 20-cv-04240-RS

i. *Evaluation of Medical Evidence*

S.L. presents two arguments concerning how the ALJ weighted the medical evidence. First, S.L. argues that the ALJ erred by failing to give controlling weight to the opinions of Dr. Washington, a treating physician, and that the ALJ did not give adequate reasons for not assigning controlling weight to his opinions. Second, S.L. argues that although the ALJ assigned "great weight" to the opinion of S.L.'s treating psychologist, Dr. Morrison, the RFC failed to include any of the limitations Dr. Morrison identified.

Addressing the first argument, under the law at the time of S.L.'s application a treating physician's opinion is generally entitled to more deference than a non-treating physician's opinion. *See* 20 C.F.R. § 404.1527 (applicable to claims filed before March 27, 2017). "[W]here the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Lester*, 81 F.3d at 830 (citation omitted). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.*

Dr. Washington's opinion supported a finding that S.L. would be unable to maintain competitive employment. In a medical source statement dated October 17, 2014, Dr. Washington opined that S.L.'s pain and other symptoms would interfere with her ability to perform small tasks. AR 269. He opined that S.L. would need a job that would allow her to shift positions at will. She would be limited in how long she could spend in certain positions. She could stand for five to ten minutes at a time, but not more than one hour total in an eight hour work day. She could walk two blocks at a time, and not more than one hour in an eight hour day. She could sit for 30 to 45 minutes at a time before needing to move positions. AR 270. She would need a job that allowed at

---

2008). Thus, these concerns are addressed below when discussing the ALJ's assessment of the medical evidence.

least two to four extra breaks each day. Further, her movements would be limited; she could occasionally lift less than ten pounds and sometimes could climb stairs, but could not stoop or squat, and could not use her hands and fingers for fine manipulation more than five to ten percent of the workday. AR 271-72. During the hearing, the ALJ recognized that these limitations would make S.L. unable to sustain competitive employment. AR 451-52.

The Commissioner argues that the ALJ did not err in assigning little weight to Dr. Washington's opinions, even though Dr. Washington was the only treating physician.[5] The Commissioner points to four reasons the ALJ gave for discounting Dr. Washington's opinion: (1) that his opinion lacked support from treatment notes; (2) that his diagrams showed unclear diagrams of trigger point findings, without explaining what those diagrams meant; (3) that Dr. Washington's notes were sometimes illegible and also showed variation in handwriting, suggesting that someone other than Dr. Washington wrote some of these notes; and (4) the record overall concerning findings about normal gait and range of motion undermined Dr. Washington's opinion on S.L.'s limitations due to pain. *See* AR 418. None of these reasons is a clear and convincing—or even a specific and legitimate—reason to discount his opinion.

First, substantial evidence does not support the assertion that Dr. Washington's opinion was not supported by his treatment notes. The ALJ wrote that "treatment notes from Dr. Washington are largely free from specific findings related to her fibromyalgia, headaches, or musculoskeletal impairments, other than noting diagnoses or complaints" and that "the degree of of debility he opines is not supported by his treatment notes." AR 418. Fibromyalgia, though, is diagnosed using a patient's subjective complaints, and thus faulting Dr. Washington's notes for

---

[5] The ALJ assigned weight to the opinions of five different medical doctors in total: Dr. Washington, Dr. Gable, Dr. Fast, Dr. Nasrabadi, and Dr. Lewis. The ALJ assigned "some weight" to the September 2014 opinion of Dr. Gable, who examined S.L. AR 417. The ALJ also assigned "some weight" to the 2014 opinion of Dr. Fast, a State government consultant. *Id.* The ALJ assigned "great weight" to the 2015 opinion of Dr. Nasrabadi, another state government consultant. *Id.* Neither Dr. Nasrabadi nor Dr. Fast examined S.L. Finally, the ALJ also assigned "some weight" to the 2019 opinion of Dr. Lewis, who examined S.L. AR 418. Dr. Washington's opinion was given the least weight; the ALJ assigned his opinion "little weight." *Id.*

not providing information beyond documentation of S.L.'s subjective complaints does not undermine his assessment of limitations due to fibromyalgia. *See* SSR 12-2p, 77 Fed. Reg. 43640 (July 25, 2012) (setting out guidance on how to evaluate fibromyalgia disability claims); *see also Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017) (concluding that ALJ erred in discounting a treating physician's assessment of fibromyalgia claimant due to his focus on claimant's subjective pain assessments, which represented "a fundamental lack of knowledge about fibromyalgia" by the ALJ, as the disease is "diagnosed entirely on the basis of patients' reports of pain and other symptoms"). Further, the treatment notes support Dr. Washington's assessment of S.L.'s pain. As one example, in a treatment note dated November 29, 2012, S.L. reported her joint pain "fe[lt] like bones breaking." AR 945.

Second, contrary to the ALJ's assessment, Dr. Washington's diagrams were not unclear. SSR 12-2p requires at least 11 of 18 positive tender points for a diagnosis of fibromyalgia. 77 Fed. Reg. at 43641. Dr. Washington indicated the tender points on the medical source statement and in treatment notes. AR 268, 906, 931, 935, 937, 946, 948. Although not each diagram in the treatment notes was labeled, these diagrams were done in the context of treatment notes that also indicated a diagnosis of fibromyalgia. The diagrams show that Dr. Washington repeatedly assessed S.L.'s tender points when diagnosing and evaluating her fibromyalgia. Further, the tender point site diagram in his medical source statement was labeled and indicated 15 positive tender points. AR 268. That Dr. Washington failed to provide a key to his diagrams in treatment notes— when he separately described a diagnosis of fibromyalgia in those notes—is not an adequate reason to reject his opinion.

Third, although some of the handwriting is illegible, the notes do clearly, and repeatedly, indicate that S.L. was suffering from pain and other relevant symptoms. On November 29, 2012, S.L. described that her joint pain "feels like bones breaking." AR 945. On July 15, 2013, S.L. reported "aches and pain all over." AR 923. On August 8, 2013, S.L. indicated pain in her wrists and joints in addition to headaches, and that she experienced significant pain while lying down. AR 920. On August 19, 2013, S.L. indicated experiencing pain in her lower back, neck, and

hands. AR 919. On February 16, 2014, the notes indicated that she was suffering from head pain on her forehead and back of neck. AR 905. These notations represent just a snapshot of the notes concerning S.L.'s pain symptoms.[6] That some of the handwriting is not legible is not a valid basis to discount Dr. Washington's opinion, when there are significant portions of the treatment notes that are legible and directly support his opinion. The ALJ also noted that the handwriting was varied and thus it was "impossible to determine whether any particular examination was completed by Dr. Washington or whether he simply reviewed the notes." AR 418. This reason, though, relies on speculation to reject Dr. Washington's opinion. His medical source statement stated that he saw S.L. once or twice a month beginning in 2012. There is no reason to believe Dr. Washington was so unfamiliar with S.L. that he could not make an appropriate assessment, even if he was not the one writing every single note.

Finally, other evidence in the record that S.L. had normal gait, strength, deep tendon reflexes, and range of motion does not contradict Dr. Washington's assessment of S.L.'s limitations due to fibromyalgia. As the Ninth Circuit has repeatedly recognized in fibromyalgia cases, "a person with fibromyalgia may have muscle strength, sensory functions, and reflexes [that] are normal." *Revels*, 874 F.3d at 663. The ALJ's assessment of Dr. Washington's opinion failed to consider "the unique characteristics of fibromyalgia," which as in *Revels* is the "principal source of [S.L.'s] disability." *Id.* at 652. In conclusion, the ALJ assigned low weight to Dr. Washington's opinion without offering the required clear and convincing reasons for doing so.

S.L. next argues that the ALJ erred by failing to include in the RFC assessment any of the limitations Dr. Morrison identified concerning S.L.'s mental functioning, despite assigning "great weight" to her opinion. Dr. Morrison found only "mild" restriction of activities due to S.L.'s

---

[6] Although fibromyalgia is "characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues," diagnosis also requires manifestation of co-occurring conditions such as "fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome." SSR 12-2p, 77 Fed. Reg. at 43641-42. Dr. Washington's treatment notes repeatedly document the presence of such co-occurring conditions.

anxiety.[7] AR 84, 263. After considering the opinions of the three mental health sources, all of whom found only mild restriction of activity, the ALJ was entitled to conclude that any impairment from anxiety was non-severe. *See* 20 C.F.R. § 404.1520a(d)(1). Although the ALJ was required to consider this non-severe impairment in determining the RFC, *see* 20 C.F.R. § 404.1545(a)(2), the ALJ was not required to include a functional restriction based on this impairment. "The mere existence of an impairment is insufficient proof of a disability" because "[a] claimant bears the burden of proving that an impairment is disabling." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (internal quotation marks and citation omitted). S.L. cites no case, statute, or regulation that supports her argument that the ALJ was required to incorporate the mild restrictions found by Dr. Morrison into the RFC. Accordingly, the ALJ's failure to include the "mild" restrictions due to S.L.'s anxiety was not error.

In conclusion, the ALJ erred by discounting Dr. Washington's opinion without providing clear and convincing reasons, but did not err in failing to include mild limitations identified by Dr. Morrison in the RFC.

   *ii. Rejection of S.L.'s Testimony*

S.L. argues that the ALJ failed to provide the "specific, clear and convincing reasons," *Garrison*, 759 F.3d at 1014, required to discount her testimony. An ALJ applies a two-step process to assess whether a claimant's testimony concerning subjective pain or symptoms is credible. *Id.* "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks and citation omitted). Second, if the claimant has presented such evidence and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014-15 (internal quotation marks and citation omitted).

---

[7] Dr. Morrison found mild impairment in S.L.'s ability to follow one to two step instructions, carry out detailed and complex instructions, maintain concentration, and maintain regular workplace attendances. AR 263-64.

As S.L. presented objective medical evidence of impairment that could reasonably produce the symptoms she alleged, the ALJ moved on to the second step. At the second step, the ALJ has failed to identify the specific instances of testimony that were not credible. To reject a claimant's testimony, the ALJ must do more than "simply recit[e] the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, the ALJ must "specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Id.* Failure to identify the specific testimony that is not credible is legal error. *Id.*

Here, the ALJ recited the medical evidence, and stated that this medical evidence "demonstrate[d] that these impairments and their effects were not as intense, persistent, or limiting as [S.L.] alleged." AR 416. Indeed, the Commissioner makes no effort to distinguish the ALJ's decision from the one in *Brown-Hunter*, despite S.L.'s discussion of *Brown-Hunter* in her motion for summary judgment. Like in *Brown-Hunter*, the ALJ "did not specifically identify any such inconsistencies; she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination." *Brown-Hunter*, 806 F.3d at 494. The Court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [S.L.'s] testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Id.* (emphasis in original). Thus, the ALJ's failure to provide specific reasons to reject the testimony is legal error.

*iii. Rejection of Lay Witness Testimony*

S.L. argues that the ALJ improperly assigned little weight to the third-party function report completed by her brother. For cases filed by March 27, 2017, such as this one, an ALJ must provide germane reasons for discounting lay witness testimony. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). The Commissioner identifies two reasons from the ALJ for assigning low weight to her brother's testimony: that he only saw S.L. weekly and that his statements conflicted with evidence from medical experts. The first is a germane reason, the second is not.

First, that the brother only saw S.L. weekly, is a germane reason to assign lower weight to the testimony. Failure to know about a claimant's functional capacity due to constraints on observing the claimant is a germane reason to reject lay testimony. *See Valentine v. Comm'r Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009); *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996). Here, notably, the ALJ did not completely discount the brother's opinion; instead, she only assigned it a lower weight. This assignment of lesser weight was not improper, as the brother had limited opportunities to perceive his sister, even if he did see her regularly over the course of the relevant period. Thus, that S.L.'s brother only saw her once a week was a germane reason to assign lower weight to his report.

In contrast, rejecting the brother's statement for inconsistency with the medical evidence was not a germane reason. Although inconsistency with medical evidence can warrant discounting lay testimony, *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005), the brother's statement was not in conflict with the medical evidence. The ALJ found that opinions about what S.L. was capable of doing were outweighed by medical opinions showing normal gait, range of motion, strength, and sensation. AR 416. Similar to the ALJ's discounting of Dr. Washington's opinion, though, this assessment reflects a misunderstanding of fibromyalgia. That a fibromyalgia patient exhibits "normal muscle strength, tone, and stability, as well as a normal range of motion . . . [is] perfectly consistent with debilitating fibromyalgia." *Revels*, 874 F.3d at 666. That purported inconsistency is not a germane reason for rejecting the brother's third-party function report. *See id.* at 668 (concluding that an ALJ did not provide a germane reason to reject the third-party function reports of fibromyalgia patient's parents, when the purported inconsistencies between their reports and the medical evidence rested on the ALJ's misunderstanding of fibromyalgia). In short, because the ALJ provided at least one germane reason, there was no legal error in assigning lower weight to the brother's third-party function report.

## V. Relief

S.L. argues that the "credit as true rule" articulated in *Garrison* should apply here, and thus the court should remand for payment of benefits. Where "(1) the record has been fully developed

and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," the reviewing court should award benefits rather than remand for further proceedings. *Garrison*, 759 F.3d at 1020.

Here, each of the credit-as-true factors are satisfied and support remanding for an award of benefits. First, the record here is fully developed. The record contains medical records from 2009 to 2019, including over one hundred pages of treatment notes from Dr. Washington. It contains opinions from Dr. Washington, two examining doctors, and two non-examining doctors. The record contains both self-assessment reports and testimony from S.L., and a third-party report from her brother. Further, this Court previously remanded for further proceedings following a joint stipulation from the parties. An ALJ re-reviewed the medical evidence, held another hearing, and issued a new written decision. It is unclear how remanding yet again would serve a useful purpose.

Second, as discussed above, the ALJ has failed to provide legally sufficient reasons to discredit Dr. Washington's opinion and S.L.'s testimony. Third, if Dr. Washington's testimony is credited as true, his opinion establishes that S.L. is disabled.[8] The VE testified that when taking into consideration the limitations described in Dr. Washington's opinion, S.L. could not return to past work and there would be no suitable jobs available. AR 452.

Similar to the claimant in *Revels*, S.L.'s "impairment of fibromyalgia has been repeatedly substantiated by tender-point examinations, which SSR 12-2P establishes as proper evidence of the condition[,]" and her function reports and the treatment notes from her doctor "consistently show that she was suffering from severe pain." 874 F.3d at 669. As the credit-as-true factors each

---

[8] Had the ALJ not erred in discounting Dr. Washington's opinion, the proper course of action would be to remand for further proceedings so the ALJ could reconsider S.L.'s testimony. Failure to provide specific reasons to discount a claimant's testimony is legal error that requires remanding for further proceedings. *Brown-Hunter v. Colvin*, 806 F.3d at 489. As Dr. Washington's opinion can separately establish disability, though, further proceedings are not necessary in this action.

support remand for an award of benefits, and "there is no serious doubt that, based on the record as a whole, [S.L.] is in fact disabled," *id.* (internal quotation marks omitted), the matter is remanded to the ALJ for the calculation and award of benefits.

### VI. Conclusion

For the foregoing reasons, S.L.'s motion for summary judgment is granted and the Commissioner's motion for summary judgment is denied. The matter is remanded for the calculation and award of benefits.

**IT IS SO ORDERED**.

Dated: November 19, 2021

RICHARD SEEBORG
Chief United States District Judge